In re Joseph Anthony COONEY, Debtor.

Carol FOWLER, Plaintiff,

v.

Joseph Anthony COONEY, Defendant.

Bankruptcy No. 38000393.
Adv. No. 3800124.

United States Bankruptcy Court,
W. D. Kentucky.

Dec. 22, 1980.

Hollis L. Searcy, Louisville, Ky., for plaintiff.

James M. Auser, Louisville, Ky., for defendant.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

At issue is whether a judgment debt for assault and battery, in which no punitive damages were awarded, is determinative of the question of dischargeability of a debt for willful and malicious injury.

On January 14, 1980, an assault and battery judgment was entered in Jefferson Circuit Court against the debtor, Joseph Cooney, in the sum of $50,000 for compensatory damages, pursuant to a jury verdict for the plaintiff herein, Carol Fowler.

Ms. Fowler claimed in her state court complaint that she suffered severe injuries

when beaten by the debtor in the parking lot of a Louisville supper club. In that complaint, she sought $150,000 in compensatory damages and $25,000 in punitive damages.

Aside from the judgment and jury instructions, we have no evidence regarding the substance of the state court action.

The trial in Jefferson Circuit Court lasted three days, and at its close instructions to the jury were given as follows:

1. If you believe from the evidence that on the 4th day of August, 1977, the defendant, Joseph Cooney, assaulted and battered the plaintiff, Carol Fowler, by striking her on or about the face, head, neck, back, and/or ribs, thereby injuring her, you will find for the plaintiff, Carol Fowler, and award her such a sum by way of compensatory damages as you believe from the evidence will fairly compensate her ...

2. In addition to any award under the above instruction No. 1, if you find for the plaintiff, Carol Fowler, against defendant, Anthony Cooney, you may, in your discretion, if you find from the evidence that the assault was wilful and malicious, award Carol Fowler punitive damages, not exceeding in all, however, the sum of $25,000, the amount claimed by the plaintiff.

3. The terms maliciously and malice used in these instructions mean the intentional doing of a wrongful act to the injury of the plaintiff, with an evil or unlawful motive or purpose.[1]

No instruction was given concerning the precise elements of assault and battery.

The jury decided in favor of Carol Fowler and awarded her $50,000 in compensatory damages. No punitive damages were given. Cooney filed bankruptcy a short time thereafter.

\*　　\*　　\*

Under the Bankruptcy Code, a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity".[2]

Fowler asserts that, as a matter of law, the judgment debt for assault and battery is one based upon a "willful and malicious injury" and is thus not dischargeable in bankruptcy.

Cooney contends that a general verdict of assault and battery does not import a finding of "willful and malicious injury", and that in fact the failure of the jury to award punitive damages evinces a denial of the claim for willful and malicious injury. The judgment debt, it is claimed, is therefore dischargeable.

\*　　\*　　\*

The application of collateral estoppel to nondischargeability cases was apparently foreshortened by the 1970 amendments to the Bankruptcy Act.[3] Identical provisions are included in the new Bankruptcy Code.[4] Respected commentators regard the legislation as vesting bankruptcy courts with exclusive jurisdiction to determine the dischargeability of debts.[5] Their logic is best illustrated by the following passage from Collier's:

When a judgment based on a liability falling within the scope of section 523(a)(6) reaches the bankruptcy court the issue is one of dischargeability and not one of liability. While liability may have been adjudicated, the nondischargeability of the liability has not been adjudicated. For the purpose of determining the dischargeability of the liability, the bankruptcy court should be able to base its findings on the facts relevant under

---

1. Instructions given by the Court, January, 1980, *Fowler v. Cooney,* No. 78-CI-03951 (Jefferson Cir. Ct. 1980).

2. 11 U.S.C. § 523(a)(6).

3. P.L. 91 467, 91st Cong.2d Sess. (1970).

4. 11 U.S.C. § 523(c).

5. 3 *Collier on Bankruptcy* ' 523.16, at 523 -128 (15th Ed.); 3 *Cowans Bankruptcy Law Practice* ' 433 (West Pub. Co. 1972); Countryman, *The New Dischargeability Act,* 45 A.Bk.L.J. 1 (1971).

section 523(a)(6) and not be bound by the findings of the state court.[6]

Courts have agreed.[7] In post-1970 cases, collateral estoppel has failed to halt bankruptcy court inquiry into the facts underlying prebankruptcy judgments.

However, a recent Supreme Court decision has cast some doubt on the moribundity of collateral estoppel in bankruptcy. In *Brown v. Felsen,*[8] the Court, considering the impact of the 1970 amendments to the Bankruptcy Act, disallowed the application of res judicata in a bankruptcy determination of dischargeability. The Court did not specifically rule on the effect of the narrower principle of collateral estoppel, but in an oftcited footnote, stated that, "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the Bankruptcy Court".[9] Still, the Court's attitude toward collateral estoppel and bankruptcy does not seem settled. In the same footnote, it acknowledged, but did not dismiss, the interpretation by some commentators that the 1970 amendments foreclosed the applicability of collateral estoppel to bankruptcy cases.

The "countervailing statutory policy" of which the court spoke might be the jurisdictional grant Congress gave the bankruptcy courts in § 523(c) for determining first-hand whether particular debts are nondischargeable.[10] The question remains open.

■ When a state court judgment debt for assault and battery is claimed to be nondischargeable as a debt for willful or malicious injury, the underlying nature of the judgment must be considered. Even if we assume that the doctrine of collateral estoppel remains viable in bankruptcy, unless it is established that an essential element of assault and battery is that the injury resulted from a willful and malicious act, the judgment debt cannot be conclusive as to nondischargeability. Collateral estoppel bars relitigation of an issue only if the issue to be concluded is identical to that involved in the prior action.[11]

A bankruptcy court should thus compare the standards applied in the prebankruptcy action with those to be used in the proceeding for nondischargeability to determine whether reliance on the prebankruptcy judgment is either justified or, possibly, re-*quired as a matter of law.* Unless the standards mirror each other, collateral estoppel cannot be invoked.

We realize the difficulty in ascribing concrete meaning to a term as amorphous as "willful and malicious". We think that the interpretation propounded by Colliers and adopted by most courts is as good as any.

> An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word willful means deliberate or intentional, a deliberate or intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.[12]

Generally, liabilities for assault and battery are founded upon a willful and malicious injury and are thus held to be nondis-

---

**6.** *Collier on Bankruptcy,* supra note 5.

**7.** *In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *In re Pigge,* 539 F.2d 369 (4th Cir. 1976); *In re Franklin,* 615 F.2d 909, 3 Bankr.L.Rptr. (CCH) ʻ 67, 341 (10th Cir. 1980).

**8.** *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

**9.** Id. at 2213, n. 9.

**10.** *In re Peterman,* 5 B.R. 687 (Bkrtcy.E.D.Pa. 1980).

**11.** *Stevenson v. International Paper Co.,* 516 F.2d 103 (5th Cir. 1975).

**12.** 3 *Collier on Bankruptcy* ʻ 523.16[1] at 523-115 (15th Ed. 1978).

chargeable.[13] But this does not apply when an assault may be committed without any element of malice.[14]

The specific issue here is whether the prebankruptcy judgment relied upon by Ms. Fowler substantially embodies those elements which constitute a willful and malicious injury. We hold that it does not. The instructions to the jury indicate that a general verdict for assault and battery simply required that the debtor/defendant have committed the injurious act. Compensatory damages were to be awarded if it was found that the defendant "assaulted and battered" the plaintiff. No recitation of the elements of assault and battery was made. And although intent might have been inferred to be an essential element of assault and battery, it was not specifically referred to as such in the instructions—a factor which causes us to question whether the jury found an elemental level that the action was intentional.[15]

The deficiencies of the jury instructions in this case notwithstanding, as a general rule in Kentucky one's act need not be willful and malicious for him to be civilly liable for assault and battery.

In *Sigler v. Ralph*,[16] the highest court in Kentucky held that a judgment for assault and battery may be entered against a man who injured another when he playfully fired a gun containing blanks at him during a city's sesquicentennial celebration. Malice, it was concluded, was not a necessary element for assault and battery in a civil action, but need only be proved to establish a criminal case for assault and battery.[17]

If malice need be proved at all in a civil action for assault and battery, it is for punitive damages only. In the prebankruptcy action here, the jury was instructed that punitives might be awarded upon a finding that the act was "willful and malicious". That malice is a distinct requirement for punitive damages belies the claim that a general verdict for assault denotes a finding of willful and malicious conduct. So much was observed *In Re DeLauro*.[18]

[T]he very existence of the doctrine of exemplary damages in cases of malicious injury imports that an assault may occur without the presence of that element. It results that under the law of Connecticut, a general judgment or verdict does not necessarily import willful and malicious injury, even though the complaint alleges willful and malicious assault. For the verdict would be supported by a finding of simple assault only, and the allegation of malice might be treated as surplusage.[19]

We therefore agree with the debtor that a willful and malicious injury is *sufficient*, but not *necessary*, to produce an assault and battery judgment. Quite simply, the sparsity of the record of the state court proceeding precludes us from making an informed and intelligent judgment as to the dischargeability of this debt. The issue must go to trial before we can decide whether the

---

13. *In re Pitner*, 6 B.R. 731, 6 BCD 1133 (Dist.Ct. E.D.Tenn.1980); *In re Bloedel*, 2 BCD 10 (E.D. Wisc.1975); *In re Cox*, 2 BCD 539 (N.D.Miss. 1976). See also, 3 *Collier on Bankruptcy*, ' 523.16 at 523 119 (15th Ed.), and cases cited in footnote 21 therein.

14. 3 *Collier on Bankruptcy*, supra note 13; *In re DeLauro*, 1 F.Supp. 678 (1932 D.Conn.).

15. In Kentucky, a finding of intent must be made to support a verdict for assault and battery, *Graves v. Dairyland Insurance Group*, 538 S.W.2d 42 (Ky.1976); *City of Louisville v. Yeager*, 489 S.W.2d 819 (Ky.1973); *Sigler v. Ralph*, 417 S.W.2d 239 (Ky.1967), and the jury should be so instructed, *Graves*, supra.

16. Supra note 15.

17. The concept of malice as applied in Kentucky is substantially similar to malice as used in bankruptcy. A malicious act has been defined in Kentucky as a "wrongful act by one person against another intentionally or with evil intent without just cause or excuse or as a result of ill will." *Jillson v. Commonwealth*, 461 S.W.2d 542, 544 (Ky.1970); *Combs v. Commonwealth*, 356 S.W.2d 761, 763 (Ky.1962). Read another way, it is "a wrongful act by one person against another intentionally without just cause or excuse"—an interpretation identical to that given by Colliers, supra note 10.

18. Supra note 14.

19. Id. at 680.

injury inflicted was indeed willful and malicious.[20]

■ But any determination that we make will relate to the *character* of the debt, and not to the *amount of the liability.* The only question for us to decide is whether the nature of the debt precludes its discharge;[21] the amount of the debt has been established by the state court.

■ Our reluctance to rely on the state court decision in adjudging nondischargeability cuts both ways. We can likewise not honor the debtor's contention that the debt is dischargeable because of the jury's refusal to award punitive damages. Exemplary damages are extraneous, and their award or denial has no effect on a verdict for compensatory damages. Consequently, the failure of a jury to award punitive damages should not necessarily result in the discharge of a debt claimed to be nondischargeable as arising from a willful and malicious act.[22]

Although this is not one of them, there may be cases where we can rely upon a prebankruptcy judgment when adjudicating a claim of nondischargeability. If the judgment substantially embodies those elements that enable us to form an opinion as to the dischargeability of the debt, we would be disinclined to order that the matter be relitigated. But where the elements of a cause of action underlying a state court judgment are incongruous with the elements that cause a debt to be nondischargeable, a bankruptcy court cannot base its decision on the previous judgment alone. Accordingly, we need to further examine the facts underlying this judgment creditor's claim.

Upon the foregoing reasoning and authorities, it is hereby

ORDERED that the matter is set for pre-trial conference on January 23, 1981, at 10:00 A.M., in chambers of Hon. Merritt S. Deitz, Jr., Bankruptcy Judge.

20. So much was done in what we will refer to as the Keenan trilogy. In *Keenan* 1, 3 BCD 697 (N.D.Ga.1977), the bankruptcy court held that it was unclear whether a general verdict for drunken driving was rendered on grounds that would cause the debt to be nondischargeable in bankruptcy. The court ordered a new trial, and it was affirmed by the district court in *Keenan* 2, 3 BCD 1183. Finally in *Keenan* 3, 4 BCD 208, the bankruptcy court adduced from

facts introduced at the new trial that the debt was indeed nondischargeable as arising from a willful and malicious injury.

21. *In re Keenan*, 3 BCD 697, 698 (N.D.Ga. 1977); *Collier on Bankruptcy* supra note 5.

22. *Thibodeau v. Martin*, 140 Me. 179, 35 A.2d 653 (1944).